### GEORGE H. BOGERT *v.* GEORGE H. DEAN.

The plaintiff was in possession of certain premises under a parol agreement with the owner that he should have a lease for five years after May 1st following. The defendant having become the owner of the premises, the plaintiff agreed in writing to surrender possession of them to him on the 1st of October preceding said 1st day of May, on payment of $350;

*Held*—1. That the parol agreement between plaintiff and the first owner was valid, and gave the plaintiff a right of possession until the 1st day of May thereafter.

2. That the plaintiff's agreement with the defendant was founded upon a sufficient consideration and was valid: and the plaintiff having performed on his part, was entitled to compel a performance on the part of the defendant.

To entitle plaintiff to recover the amount agreed to be paid on his surrender of possession he was bound to show that he was ready and willing to surrender on the day agreed on, unless a strict compliance with the condition, on that day, was waived by the defendant; and if such were the fact, it rested with the plaintiff to show it.

What facts will show a waiver of strict performance—*query?*

On the 1st of October, the defendant's agent came to the house to take the height of the buildings. He had not been instructed by the defendant to get the key, and the plaintiff, in consequence of a violent storm on that day, and because he could not get into the house he was going to, did not resume his effort until the next day,—*Held*, that though the evidence of a waiver on the part of the defendant was slight, and perhaps doubtful, yet the Court below having deemed it sufficient, the judgment should not be disturbed.

APPEAL by the defendant from a judgment of the Marine Court at general term.

This was an action against the defendant to recover the sum of three hundred and fifty dollars, with interest from October 1, 1860, alleged to have been agreed to be paid by the defendant to the plaintiff, upon the surrender by the plaintiff to the defendant of the house and premises known as No. 16 Sixth Avenue.

One Delaplaine was the owner of the premises at the commencement of the plaintiff's possession. The plaintiff was in possession of the premises, under a parol agreement with Delaplaine that he should have a lease for five years from May 1, 1860, at four hundred dollars a year, together with taxes and croton water rents, and he was to make improvements.

The defendant agreed to purchase the house of Delaplaine. Thereupon he negotiated with the plaintiff, who agreed that he would accept three hundred and fifty dollars, and surrender the premises on the 1st of October then ensuing; the defendant said he would give it, and the following memorandum was signed by the plaintiff.

"I hereby agree to surrender possession on the first day of October next, on payment to me of three hundred and fifty dollars.        GEORGE H. BOGERT."

The sale to the defendant by Delaplaine was completed. The plaintiff claimed to have performed his contract to surrender possession on the 1st day of October, and brought his action to compel defendant to pay the sum agreed to be paid for such surrender.

Judgment was rendered for plaintiff, and defendant appealed.

*Merwin R. Brewer* and *Moses Ely* for appellant.
*Fredcrick W. King* for respondent.

BY THE COURT.—DALY, F. J.,—The only absolute interest which Bogert had in the premises, under the oral agreement between him and Delaplaine, was a right to the possession until the first of May following; the parol understanding between him and Delaplaine operating as a valid agreement for the occupation of the premises from the time of the commencement of Bogert's possession until the first of May thereafter, (3 *Rev. Stat.* 34, § 1, 5 *ed.,*) and this interest, Bogert could surrender or transfer by a parol agreement, (3 *Rev. Stat.* 220, § 6, 5 *ed.,*) but whatever may have been his interest, he surrendered and assigned it in writing, in that respect complying with all that the statute required (3 *Rev. Stat.* 220, § 6, 5 *ed.*)

The agreement to sell between Delaplaine and Dean was subject to the right of Bogert as lessee. In consonance with that agreement, which was in writing, Bogert, upon Dean's promise to pay him three hundred and fifty dollars, if he would surrender the premises on the first of October then ensuing, signed an agreement in writing, by which he bound himself to do so, which writing, Delaplaine, with the assent of Bogert and Dean, agreed to hold for both parties. He held it until the purchase was completed, and on the day when it was completed gave it up to Dean at his request. This was a valid agree-

---

Bogert v. Dean.

---

ment, founded upon a sufficient consideration, which Dean, after it was delivered to him, could enforce, and having been executed at his request and delivered to him, Bogert, in the want of performance on his part, was equally entitled to the benefit of it.

To entitle him to recover the three hundred and fifty dollars Bogert was bound to show that he was ready and willing to surrender up the premises on the first of October, unless a strict compliance with the condition on that day had been waired by the defendant, and if such were the fact, it rested with Bogert to show it. *Benedict* v. *Lynch*, 1 Johns. C. R. 374; *Marshall* v. 9 Ad. and Ellis, N. S. 791.

Bogert had not removed from the premises on the first of October. He moved a part of his effects on the twenty-ninth of September, and the family appear to have moved out of the house before the first of October. On the first of October there was a violent storm, and it would seem, in consequence of that, and because he did not get into the house he was going to, that he did not remove the bulk of his effects until the second. On the second, according to his testimony, the family up stairs moved and he also, though he kept a desk and two chairs there after, waiting for Dean to take possession. Dean's agent went to the house on the first, but it would seem, not for the purpose of taking actual possession, as he was sent by Dean merely to take the height of the ceiling, and testified that he had not been instructed by Dean to get possession of the key. No further step was taken by Dean, and on the sixth, Bogert called upon him and he told Bogert that he did not want the house until May, and that he could keep it, and upon Bogert asking him for the three hundred and fifty dollars, he replied evasively, " My memory is very treacherous. I don't recollect." On the thirteenth, Bogert went and tendered the keys, but as Dean did not take them he brought them away, and on the fifteenth he sent them to Dean with a note advising him of the surrender of the premises. There was some conflict as to the time of Bogert's removal, Dean's agent having testified that he saw Bogert removing out furniture on the 4th.

On the testimony the justice gave judgment for the plaintiff

for the three hundred and fifty dollars. We must assume it to have been on the ground that Bogert's continuance on the premises after the 17th of October was with Dean's assent and acquiescence. The evidence, I think, shows that Dean had no intention or wish to take possession on the 1st of October. That for some reason not disclosed, he was not ready to do so until the 1st of May, and that consequently he wished to avoid the payment of the three hundred and fifty dollars, and if he could, to hold Bogert as his tenant until the expiration of that period. He was examined as a witness, and denied what was expressly sworn to by Delaplaine, that he had agreed to pay Bogert the three hundred and fifty dollars, or anything for quitting the premises. Delaplaine swore that he told Dean that though the agreement to give Bogert a lease for five years was not in writing, that his word had been given for it, that Bogert's interest must therefore be protected, and that they, Bogert and Dean, must make their own arrangement about the lease, and Dean did not deny that he had requested and received the written agreement which bound Bogert. Bogert in fulfilment of his engagement had hired other premises. His removal on the first, and that of the family up stairs, appears to have been interrupted by the violent storm on that day, and he removed from the premises substantially, according to his statement, on the day following. The purpose for which the defendant's agent called was an indication that Dean did not want actual possession on that day, that he was not yet ready to use or take possession of the house, upon which Bogert may very well have lingered until the 6th, when he called upon Dean, and the interview took place which has been referred to. The evidence to show a waiver on the part of Dean is slight, and perhaps doubtful, but the justice deemed it sufficient, and I think we ought not to disturb the judgment.